**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO. 3:25-CV-00624-RSE**

**KIMBERLY R.**                                                                          **PLAINTIFF**

**VS.**

**FRANK BISIGNANO,**
*Commissioner of Social Security*                                                **DEFENDANT**

**MEMORANDUM OPINION**
**AND ORDER**

The Commissioner of Social Security denied Claimant Kimberly R.'s (Claimant's)

application for disability insurance benefits. Claimant seeks judicial review of the Commissioner's

denial pursuant to 42 U.S.C. § 405(g). (DN 1). Claimant filed a Brief and Fact and Law Summary.

(DN 16; DN 17). The Commissioner filed a responsive Fact and Law Summary. (DN 19). Claimant

filed a reply. (DN 20).

The Parties have consented, under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, to the

undersigned United States Magistrate Judge conducting all further proceedings in this case,

including issuance of a memorandum opinion and entry of judgment, with direct review by the

Sixth Circuit Court of Appeals in the event an appeal is filed. (DN 11; DN 12).

I.      Background

Claimant applied for disability insurance benefits under Title II of the Social Security Act

on October 21, 2022, alleging her disability began on August 17, 2020. (Transcript, hereinafter,

"Tr." 186-87). She claimed her disability was caused by multiple sclerosis, cognitive disorder,

depression, anxiety, and optic neuritis – right eye. (Tr. 223). Claimant's application was denied at

the initial level on February 9, 2023, and again at the reconsideration level on May 12, 2023. (Tr. 105-08; 110-12).

At Claimant's request, Administrative Law Judge Candace McDaniel ("ALJ McDaniel") held a remote administrative hearing on January 25, 2024. (Tr. 48-80). Claimant appeared by video with her representative. (Tr. 50). An impartial vocational expert also testified at the hearing. (*Id.*). Claimant provided the following relevant testimony at the hearing.

She is in her forties, has a bachelor's degree in nursing, and lives in a house with her two daughters, ages twelve and nine. (Tr. 54-55). She drives her kids to school. (Tr. 55-56). She previously worked as a nurse in the bone marrow transplant unit at the University of Louisville Hospital. (Tr. 56). In August of 2020, she stopped working due to issues with her memory and concentration, worsening anxiety and depression, and issues with her left leg tied to multiple sclerosis (MS). (Tr. 57). To treat her MS, she uses at-home injections of Kesimpta and takes Provigil, which initially helped with fatigue but has become less effective. (Tr. 58, 60-61). At times, she stops taking the Provigil for four to seven days to increase its effectiveness. (Tr. 61). When the Provigil begins to wear off, she rests or takes a nap. (Tr. 61-62).

Claimant also experiences muscular fatigue, with her legs and arms becoming heavy. (Tr. 62). She must concentrate in using her extremities to walk when she feels this heaviness. (*Id.*). She estimates that she could not walk a block without fatigue becoming an issue. (Tr. 63). She uses a cane and walking stick at her house. (Tr. 68). Claimant also experiences headaches three days a week as part of her MS that affect her ability to get through a normal day. (Tr. 65-66). Doctors have not prescribed medication for Claimant's headaches; she instead uses ibuprofen, which sometimes "helps a little" and sometimes does not. (Tr. 65, 69).

As for mental impairments, Claimant does not think she handles stress very well. (Tr. 66). According to Claimant, her providers have told her to remove herself from stressful situations. (Tr. 67). She also notes having angry outbursts. (*Id.*). She sees a therapist for her MS and depression, as well as grief from her husband's sudden death in 2023. (Tr. 59).

After considering Claimant's testimony and the medical records submitted, ALJ McDaniel issued an unfavorable decision on April 22, 2024. (Tr. 33-43). She applied the five-step sequential analysis for evaluating adult disability claims from 20 C.F.R. § 404.1520 and found as follows. First, Claimant has not engaged in substantial gainful activity since August 17, 2020, her alleged onset date. (Tr. 35). Second, Claimant has the following severe impairments: Multiple Sclerosis, Anxiety, and Depression. (Tr. 35-36). Third, Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (Tr. 36-37).

At Step Four, ALJ McDaniel found Claimant has the residual functional capacity ("RFC") to perform "light work" as defined in 20 C.F.R. 404.1567(b) with the following limitations:

> She can occasionally climb ramps and stairs. She should never climb ladders, ropes, or scaffolds. She can occasionally stoop, kneel, crouch, and crawl. She should avoid concentrated exposure to temperature extremes involving cold, heat, humidity, and wetness. She should avoid concentrated exposure to vibration. She can never have exposure to unprotected heights or dangerous machinery. She can understand, remember, and carry out simple instructions.

(Tr. 37-41). Additionally at Step Four, ALJ McDaniel found Claimant cannot perform her past relevant work. (Tr. 41). Fifth and finally, considering Claimant's age, education, work experience, and RFC, ALJ McDaniel found there are jobs that exist in significant numbers in the national economy that Claimant can perform. (*Id.*). ALJ McDaniel concluded Claimant was not under a disability, as defined in the Social Security Act, from August 17, 2020 through the date of her decision. (Tr. 43).

Claimant administratively appealed ALJ McDaniel's denial (Tr. 183), but the Appeals Council declined review (Tr. 19-21). At that point, ALJ McDaniel's denial became the final decision of the Commissioner, and Claimant sought judicial review from this Court pursuant to § 405(g). (DN 1).

II.    Standard of Review

Administrative Law Judges make determinations as to social security disability by undertaking the five-step sequential evaluation process mandated by the regulations. *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 803-04 (6th Cir. 2008) (citing *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)); 20 C.F.R. §§ 404.1520(b), 416.920(b). Throughout this process, the claimant bears the overall burden of establishing they are disabled; however, the Commissioner bears the burden of establishing the claimant can perform other work existing in significant numbers in the national economy. *Id.* at 804 (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

When reviewing the Administrative Law Judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, the Court's review of the Administrative Law Judge's decision is limited to an inquiry as to whether the Administrative Law Judge's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the Administrative Law Judge employed the proper legal standards in reaching his conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the

4

other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993).  The Supreme Court has clarified "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high[.]" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted).

III.    Analysis

Claimant asserts one claim of error – that ALJ McDaniel improperly evaluated the medical opinion of Dr. Michael Whitten in the RFC in violation of 20 C.F.R. § 404.1520c. (DN 17, at PageID # 1181-89).

In formulating a claimant's RFC, the ALJ must evaluate the persuasiveness of the medical opinions in the record. 20 C.F.R. §§ 404.1520c, 404.1529(a). The regulations specify that an ALJ will not give any specific evidentiary weight to any medical opinion. *Id.* ALJs instead evaluate the "persuasiveness" of medical opinions using five factors: (1) supportability; (2) consistency; (3) relationship to the claimant; (4) specialization; and (5) other factors. § 404.1520c(c)(1)-(5). Of these factors, supportability and consistency are the most important. *Id.* at (a), (b)(2). The regulations, accordingly, require ALJs to explain how they considered the supportability and consistency factors in their determination, which is known as the "articulation requirement." *Id.* at (b)(2). Comparatively, ALJs "may, but are not required to, explain" their consideration of factors (3)-(5). *Id.*

In assessing a medical opinion's "supportability," "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). And the "consistency" factor denotes the extent to which the medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim[.]" *Id.* at (c)(2). To further illuminate this distinction, "supportability" relates to the objective

medical evidence and supporting explanation provided by a medical source to bolster their *own* opinion; by contrast, "consistency" relates to the relationship of a medical source's opinion to *other* medical opinions and evidence of record. 20 C.F.R. § 416.920c(c)(1)-(2).

The Sixth Circuit has not defined a specific standard to determine whether an ALJ sufficiently complied with the "articulation requirement." However, courts in this Circuit have applied the requirement literally. *See, e.g.*, *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 909 (E.D. Mich. Aug. 13, 2021) ("The administrative adjudicator has the obligation in the first instance to show his or her work, i.e., to explain in detail *how the factors actually were applied* in each case, to each medical source. Resorting to boilerplate language to support a finding of unpersuasiveness does not satisfy that obligation.") (emphasis in original); *White v. Comm'r of Soc. Sec.*, No. 1:20-CV-00588-JDG, 2021 WL 858662, at *21 (N.D. Ohio Mar. 8, 2021) ("Although the new standards are less stringent in their requirements for the treatment of medical opinions, they still require that the ALJ provide a coherent explanation of [her] reasoning."); *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 5:20-CV-1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021) (finding that "the [new] regulations do require that the ALJ clearly explain his consideration of the opinions and identify the evidence supporting his conclusions").

Dr. Michael Whitten, Ph.D. ("Dr. Whitten") performed a psychological consultative examination on Claimant on February 3, 2023. (Tr. 765-70). After conducting a clinical interview, Dr. Whitten determined that Claimant's symptoms slightly affect her capacity to understand, remember, and carry out instructions for simple repetitive tasks and to sustain attention and concentration towards performance of simply repetitive tasks. (Tr. 767-68). He further found

Claimant's symptoms moderately affect her capacity to understand, remember, and carry out instructions for complex tasks and to sustain attention and concentration towards performance of complex tasks. (Tr. 768). And Dr. Whitten determined Claimant's symptoms markedly affected her ability to tolerate stress and pressure of day-to-day employment and her capacity to respond appropriately to supervisors and coworkers in a work setting. (*Id.*). Following these findings, Dr. Whitten diagnosed Claimant with major depressive disorder. (*Id.*).

As required by the regulations, ALJ McDaniel evaluated the medical opinions of record in forming Claimant's RFC, including the consultative opinion of Dr. Whitten. ALJ McDaniel determined Dr. Whitten's opinion was "partially persuasive" and explained:

> The claimant has experienced some depression, however there is no indication that the clamant has had difficulty interacting with others, even by her own report (Exh. 4E). The examiner diagnosed the claimant with major depressive disorder, which is consistent with the treatment record. At the examination, the claimant appeared depressed with an anxious effect (Exh. 11F p 1) but she was not in acute distress. This is consistent with claimant's report that her overall mood was up and down but she denied hopelessness (Exh 12F p. 99). Further, there is little support in the record for the determination that the claimant's ability to tolerate the stress and pressure of day to day employment is markedly affected. The claimant's self-report indicates that she is able to care for her children, prepare meals, and complete some chores (Exh. 4E). The determination that the claimant's ability to sustain attention and concentration towards the performance of simple repetitive tasks is slightly affected is consistent with the examiner's observation that the claimant was oriented to time, place, purpose, and name, but that she reported feeling stressed out about her current condition (Exh 11F p. 2).

(Tr. 40).

Claimant concedes that ALJ McDaniel adequately articulated the supportability of Dr. Whitten's opinion but maintains that her consistency evaluation "falls well short of the requirements of the regulations." (DN 17, at PageID # 1185-86). Specifically, Claimant argues the only record ALJ McDaniel references for consistency purposes is Claimant's Function Report. According to Claimant, ALJ McDaniel's reference to the Function Report "cherry-picked" and

7

overstated Claimant's performance of activities. (*Id.* at PageID # 1186). The ALJ ignored substantial evidence in the record of Claimant's limitations, per Claimant, including Dr. Wood's September 3, 2020 initial evaluation, continued anxiety complaints later that month, and her continued complaints of anxiety and low mood, as well as medication changes, throughout 2021, 2022, and 2023. (*Id.* at PageID # 1186-88). Because ALJ McDaniel failed to build an accurate and logical bridge from the evidence to her rejection of Dr. Whitten's opinion regarding her inability to handle stress, Claimant advocates reversible error occurred and remand is warranted. (*Id.* at PageID # 1189).

The Commissioner argues that ALJ McDaniel properly considered the "consistency" of Dr. Whitten's opinion by noting Plaintiff's reports that were inconsistent with Dr. Whitten's opined marked limitations. (DN 19, at PageID # 1197-98). The Commissioner explains that ALJs may appropriately discount an opinion because it is inconsistent with a claimant's daily activities. (*Id.*). As for the ALJ's alleged cherry-picking of evidence, the Commissioner maintains ALJs are not required to discuss each and every medical record when evaluating medical opinions. (*Id.* at PageID # 1200). Additionally, the Commissioner asserts that many of the "findings" Claimant relies on to show that Dr. Whitten's opinion was consistent with the evidence are her own subjective reports of her symptoms, not objective findings by a provider. (*Id.*). Because Claimant is essentially asking the Court to reweigh the evidence, which is not permissible on judicial review, the Commissioner argues Claimant's claim of error is meritless.

In reply, Claimant clarifies she is not asking the Court to reweigh the evidence but is challenging the ALJ's methodology in evaluating the mandatory articulation requirement from 20 C.F.R. § 404.1520c(b)(2). (DN 20, at PageID # 1204). Claimant also believes the Commissioner mischaracterizes the ALJ's consistency analysis by stating that ALJ McDaniel found Dr. Whitten's

opinion was generally inconsistent with the evidence of record. (*Id.* at PageID # 1205). But Claimant points out that ALJ McDaniel never said that, and her consistency analysis was limited to: a generalized statement of "little support," one citation to a function report, and one citation to a single treatment note. (*Id.*). According to Claimant, this lack of analysis is the "very pattern the Sixth Circuit has condemned." (*Id.* (citing *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 724 (6th Cir. 2014); *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 776-77 (6th Cir. 2008)). Claimant additionally submits that her accommodated home activities of childcare, meal prep, and chores do not establish workplace capacity, that the Commissioner mischaracterizes Mr. Whitten's examination as not "otherwise remarkable," and that mental status findings from her providers constitute objective clinical observations. (*Id.* at PageID # 1206-08). Lastly, Claimant asserts that ALJ McDaniel improperly diminished Dr. Whitten's opinion by emphasizing it was a one-time interview and that Claimant's contact with her family and absence of prior firings do not demonstrate workplace interaction capacity, as ALJ McDaniel seems to correlate. (*Id.* at PageID # 1209-10).

The Commissioner's evaluation of the persuasiveness of Dr. Whitten's opinion meets the articulation requirement from the regulations. Contrary to Claimant's position, an ALJ's consistency analysis does not limit the comparison of the medical opinion to only objective medical evidence in the record. Instead, ALJs must compare the medical opinion to "evidence from other medical sources and nonmedical sources in the claim[.]" 20 C.F.R. § 416.920c(c)(2); *see also Hopkins v. Comm'r of Soc. Sec.*, No. 23-5696, 2024 WL 3688302, at *4 (6th Cir. Apr. 9, 2024) ("The regulation provides that the evaluation of the consistency factor involves comparing the opinion to medical and nonmedical sources, including the claimant herself." ).

ALJ McDaniel did so here. In finding that "there is little support in the record" for Dr. Whitten's finding that Claimant's ability to tolerate stress and pressure of day-to-day employment is markedly affected, ALJ McDaniel cited to Claimant's own Function Report, which indicated "she is able to care for her children, prepare meals, and complete some chores." (Tr. 40 (citing Ex. 4E). ALJ McDaniel did not mischaracterize Claimant's Function Report, as Claimant alleges. In the Function Report, Claimant stated she cares for her two daughters daily and that she cooks and provides transportation. (Tr. 235). Later, she stated that she prepares meals daily, including making sandwiches, frozen pizzas, and homemade dinners with one course one to two times per week. (Tr. 236). Claimant also stated in her Function Report that she does dishes every other day, does laundry several days a week, cleans the bathrooms weekly, and shops for groceries and clothing. (Tr. 236-37). That Claimant also stated her father picks her kids up from school several days a week does not alter her representations that she is able to care for her children. While Claimant is correct that her ability to care for her children or perform chores does not establish workplace capacity, an ALJ may consider the Claimant's reported activities of daily living in evaluating the persuasiveness of medical opinions in the RFC. *See, e.g., Dunlavy v. Comm'r of Soc. Sec.*, No. 24-3333, 2024 WL 4558606, at *3 (6th Cir. Oct. 23, 2024) (upholding ALJ's finding that an opinion identifying various mental limitations was minimally persuasive where ALJ highlighted inconsistencies between the opinion and the claimant's ability to do household chores, garden, and babysit her grandchildren); *Hopkins*, 2024 WL 3688302, at *4 ("[A] claimant's ability to live independently is a valid consideration when evaluating opinion evidence.").

Nor did ALJ McDaniel ignore substantial evidence in the record of Claimant's impairments, as Claimant alleges. While she did not discuss this evidence in evaluating the consistency of Dr. Whitten's opined marked restriction in tolerating stress and pressure of day-to-

10

day employment, ALJ McDaniel discussed this evidence generally in evaluating the consistency of Dr. Whitten's opinion. ALJ McDaniel stated that Dr. Whitten's diagnosis of depressive order was supported by the treatment record and that Claimant's depressed appearance with anxious effect but no acute distress is consistent with Claimant's reports of overall mood being up and down but no hopelessness. (Tr. 40).

ALJ McDaniel also discussed the evidence Claimant references elsewhere in the RFC determination. She noted Dr. Wood's treatment of Claimant's anxiety and depression, with overall mood being up and down, and increases in medication which helped her mood and anxiety. (Tr. 39 (citing Tr. 782 (on October 26, 2020, noted benefits from increasing Effexor in both mood (somewhat less depressed) and anxiety (still anxious but less frequent); Tr. 847 (on August 4, 2022, treatment for depression and anxiety complicated by chronic illness and psychological stressors, continue Effexor for anxiety/depression; Tr. 868-69 (on February 16, 2023, noted Claimant reports being "ok overall," still struggling with grief and sadness regarding the death of her husband, "[o]verall mood is 'up and down' but pt denies hopelessness.")))). Judges in this District have repeatedly determined that an ALJ's reasons for rejecting or adopting a medical opinion "may be gleaned from elsewhere in the written decision." *Victor H. v. O'Malley*, No. 3:22-CV-563-CRS, 2024 WL 1008580, at *5 (W.D. Ky. Mar. 8, 2024) (citing *Booker R. v. Comm'r of Soc. Sec.*, No. 3:22-cv-170, 2023 WL 4247312, at *4-5 (S.D. Ohio June 29, 2023) ("meaningful judicial review exists – even if the ALJ provided only a cursory or sparse analysis – if the ALJ made sufficient factual findings elsewhere in the decision that supports her conclusion."); *Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016) (it is sufficient for an ALJ's reasons for determining the consistency of a medical opinion to be found elsewhere in the decision)). ALJ

McDaniel's consideration of this evidence elsewhere in the decision adds support and clarification as to her conclusions regarding the persuasiveness of Dr. Whitten's opinion.

Claimant's challenge to ALJ McDaniel's reference to Dr. Whitten basing his opinion on a one-time interview with the Claimant also fails. Beyond the mandatory "supportability" and "consistency" factors from 20 C.F.R. § 416.920c(c), ALJs may consider the provider's "relationship with the claimant," including the length of the treatment relationship, the frequency of examinations, and the purpose and extent of the treatment relationship in determining the persuasiveness of a medical opinion. 20 C.F.R. § 416.920c(c)(3)(i)-(iv). Therefore, ALJ McDaniel's mention of Dr. Whitten's one-time interview with the Claimant was an appropriate consideration in her general evaluation of the opinion.

ALJ McDaniel provided an accurate and logical bridge between the evidence of record and her conclusions regarding the persuasiveness of Dr. Whitten's opined limitations. And because ALJ McDaniel considered both evidence from medical sources and non-medical sources in the record in evaluating the consistency of Dr. Whitten's opinion, she complied with the regulations, and no error results.[1]

IV.    Order

**IT IS THEREFORE ORDERED** that the final decision of the Commissioner is **AFFIRMED.**

This is a final and appealable Order and there is no just cause for delay.

Copies:    Counsel of Record

---

[1] Based on this conclusion, the Court need not address the remainder of Claimant's arguments from her reply brief regarding ALJ McDaniel's evaluation of Dr. Whitten's opinion.